UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRANDON SANDERS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) C.A. NO. |
| MAKESPACE LABS, INC, | ) ) |
| Defendant. | ) JURY TRIAL DEMANDED ) ) ) ) ) |

## COMPLAINT

### I.     PRELIMINARY STATEMENT

1. Plaintiff Brandon Sanders, individually and on behalf of all others similarly situated, files this Class Action Complaint against MakeSpace Labs, Inc. ("MakeSpace" or "Defendant").

2. In May 2018, Mr. Sanders sought employment with MakeSpace. After the application and interview process, MakeSpace gave him a conditional offer of employment contingent on passing a background check. MakeSpace then ordered a consumer report about Mr. Sanders. Devastatingly for Mr. Sanders, Checkr's consumer report incorrectly stated he had multiple pending criminal charges for rape and sexual assault. Mr. Sanders did not and does not have any pending criminal charges, and has never been convicted of any crime. Nonetheless, MakeSpace used the inaccurate consumer report to summarily deny Mr. Sanders employment.

## II.     NATURE OF THE CASE

3. Mr. Sanders brings this action against Defendant MakeSpace for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") and the New York State Human Rights Law, N.Y. Exec Law § 290 *et seq.* ("NYSHRL").

4. The FCRA regulates the use of "consumer reports" for employment purposes, commonly called "background reports." Congress included in the statutory scheme a series of due-process-like protections that impose strict procedural rules on "users of consumer reports," such as MakeSpace. This action involves MakeSpace's systematic violations of these important rules.

5. MakeSpace denied Mr. Sanders employment based on the inaccurate results of a standardized background screen conducted by Checkr, Inc. ("Checkr"). Pursuant to an agreement between Checkr and MakeSpace, Checkr performs standardized background screens on MakeSpace candidates for hire or promotion. Checkr adjudicated Plaintiff as not eligible for the job based upon the purported pendency of numerous criminal charges for rape and sexual assault. Plaintiff had been acquitted of all charges more than two years prior to Checkr's report.

6. In violation of the FCRA, MakeSpace willfully and negligently failed to comply with the FCRA's mandatory pre-adverse action notification requirement, and failed to provide a copy of the inaccurate background report it obtained from Checkr at least five business days before taking adverse action against him, as required by 15 U.S.C. § 1681b(b)(3). Numerous other individuals who have applied to MakeSpace for employment have been similarly aggrieved by the same violation.

7. Additionally, MakeSpace's actions violated important New York state law protections for individuals acquitted of criminal charges. The NYSHRL provides that it shall be

an unlawful discriminatory practice for an employer to inquire about or act adversely upon any arrest or criminal accusations of an employee or applicant, where the arrest or criminal accusations are "not then pending against the individual" and "which was followed by a termination of that criminal action or proceeding in favor of such individual…"  N.Y. Exec Law § 296.16

8. MakeSpace violated the NYSHRL by inquiring about criminal records that were not pending against Plaintiff and that were terminated in his favor.

9. MakeSpace violated the NYSHRL by taking adverse employment action against him based on criminal charges that are not pending and that were terminated in his favor.

### III.   JURISDICTION & VENUE

10. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

11. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

### IV.   PARTIES

12. Plaintiff Brandon Sanders is an adult individual who resides in New York, New York.

13. Defendant MakeSpace regularly conducts business in the State of New York and has a principal place of business in New York, New York.

### V.   FACTUAL ALLEGATIONS

14. In April 2014, during Mr. Sanders' senior year in college, he was charged with rape by forcible compulsion, sexual assault, aggravated indecent assault without consent, and indecent assault without consent.

15. Mr. Sanders strongly maintained his innocence. He pled not guilty, and rejected multiple opportunities to take a plea deal, which would have involved registering as a sex offender.

16. The rape charge against Mr. Sanders was dismissed on February 3, 2015.

17. Mr. Sanders took the case to trial, which began on October 2, 2015. The next day, the court declared a mistrial.

18. Mr. Sanders waited nearly another year for the next trial.

19. The stress of waiting took a tremendous toll on Mr. Sanders. In June 2016 he spent several days in the hospital receiving treatment for depression and anxiety. He subsequently had to start seeing a therapist to manage the continuing stress.

20. The case went to trial a second time on August 30, 2016. After a two-day trial, the jury found Mr. Sanders **not guilty** of all the charges.

21. Mr. Sanders was profoundly relieved by the not guilty verdict and was ready to put the lengthy and stressful experience behind him. He would not go to prison or be labeled a sex offender, and had cleared his name.

22. In May 2018, Mr. Sanders applied for employment with MakeSpace.

23. After completing the employment application and interview, MakeSpace sent Mr. Sanders an employment offer letter on Tuesday May 10, 2018.

24. On Saturday May 14, 2018, Mr. Sanders e-mailed Jessica Lu, a MakeSpace employee:

> I'm just touching base to alert you that I've decided to join MakeSpace! I signed the offer letter yesterday and am beyond excited to get started. I look forward to meeting the team and get underway with my training next week.

25. Ms. Lu responded that MakeSpace was "very excited" to have him join the company and that training started on Monday, May 21, 2018.

26. On Thursday, May 17, 2018, MakeSpace obtained a consumer report about Mr. Sanders from Checkr.

27. According to Checkr, Mr. Sanders had three open criminal charges for felony "Rape Forcible Compulsion," felony "Sexual Assault," felony "Agg Ind. Assault W/O Consent," and misdemeanor "Indec Asslt W/O Cons of Other."

28. Checkr reported that each of these criminal charges had a "Charge Date of May 21, 2014."

29. Checkr reported that each of these charges involved "Case Number MJ-48303-CR-0000041" with a "Court Jurisdiction" in "AOC – Pennsylvania – McKean County."

30. Checkr reported that each of these criminal charges had a "Disposition" of "Held for Court," with a "Disposition Date" of May 21, 2014.

31. Of course, this information was inaccurate and untrue, because there were no pending criminal charges against Mr. Sanders at the time of the report.

32. On February 3, 2015, the Commonwealth of Pennsylvania **dismissed** the charge of "Rape Forcible Compulsion."

33. On August 30, 2016, a jury found Mr. Sanders **not guilty** of the remaining criminal charges for felony "Sexual Assault," felony "Agg Ind. Assault W/O Consent," and misdemeanor "Indec Asslt W/O Cons of Other."

34. Checkr failed to report the final dispositions of the criminal charges against Mr. Sanders.

35. The public records for the dismissal and not guilty verdicts were publicly available to Checkr.

36. Checkr's report was inaccurate.

37. Checkr's report included criminal charges that were not pending at the time of the report and which did not result in a criminal conviction.

38. Checkr graded its report about Mr. Sanders as "red" or "Consider," instead of "green" or "Clear."

39. Upon receipt of the May 17, 2018 Checkr report, MakeSpace removed Mr. Sanders from hiring consideration, based upon the Checkr report which adjudicated Mr. Sanders as being not eligible for employment at MakeSpace.

40. MakeSpace adopted Checkr's adjudication as its own without any further process afforded to Mr. Sanders and took adverse action against Mr. Sanders based upon that adjudication.

41. Later on May 17, 2018, Checkr sent to Mr. Sanders an email stating:

> Hello Brandon Terrell Sanders,
>
> Attached is a copy of your background report.
>
> The company that initiated this background check has received a copy of the report as well. If you have any questions about your status with that company, please contact them directly.
>
> A Summary of Your Rights Under the Fair Credit Reporting Act is attached and can also be found here.
>
> Checkr will have no further updates available for you, as your background check is now complete.
>
> Thank you,
>
> Checkr Inc.

6

42. The May 17, 2018 email did not instruct Mr. Sanders to contact MakeSpace if the information was inaccurate, or provide any time frame for doing so.

43. Mr. Sanders was shocked and horrified by the appearance of this inaccurate and outdated information on his background report – this was exactly the result he had sought to avoid by rejecting multiple plea deals and going to trial.  He believed that the extremely stressful experience of the two trials was behind him and that he had cleared his name.

44. On Monday, May 21, 2018, Mr. Sanders arrived at MakeSpace to begin his training, prepared to address Checkr's inaccurate reporting by explaining that the charges were no longer pending and that he had been found not guilty on all charges.

45. Instead, Ms. Lu informed Mr. Sanders that MakeSpace would not move forward with his employment because of the appearance of the records on the Checkr report.

46. The inaccurate report and MakeSpace's reliance on it was devastating to Mr. Sanders.  He went to trial and rejected plea deals to avoid this exact scenario.

47. Mr. Sanders disputed the report with Checkr.

48. In only a few days, Checkr was able to correct its inaccurate report and send Mr. Sanders a revised report – which did not include any criminal records whatsoever.

49. After receiving the revised consumer report from Checkr, Mr. Sanders contacted MakeSpace to reiterate that he had been acquitted of all charges that had not already been dismissed, and maintains a clear criminal record.  He pointed out that Checkr's original report did not contain up to date information about the disposition of the trial, and attached a full copy of the court records showing that he had been exonerated.

50. On May 23, 2018, MakeSpace's Director of Human Resources, Megan Lyons, left a voicemail for Mr. Sanders, stating: "I just wanted to follow up on the conversation that you

had on Monday with Jessica. As you know your offer was contingent on passing a background check and unfortunately your background check results disqualify you from MakeSpace…"

51. Mr. Sanders e-mailed Ms. Lyons and asked why he was disqualified from employment with MakeSpace given that he has no convictions whatsoever.

52. Ms. Lyons responded via e-mail: "MakeSpace follows a specific process for clearing various items that are generated in background checks. The items that were generated on your background check unfortunately disqualify you from employment due to the nature of the items that were listed."

53. On May 31, 2018, Mr. Sanders responded to Ms. Lyons:

Hey Megan,

This is Brandon Sanders reaching out to you after obtaining some new information. It appears Checkr made a mistake with my background check (as I noted) and have since revised this issue after an investigation.

With the revisions, my background check was completely clean.

I am aware Checkr provided MakeSpace with these corrections. With this new information, I am reaching out to see if I may re-join the company after being terminated based on information that was incorrect, prior to a proper investigation?

I look forward to hearing from you.

54. Ms. Lyons responded that MakeSpace "will not be reinstating your employment at MakeSpace."

55. MakeSpace willfully took an adverse employment action against Mr. Sanders based upon Checkr's adjudication of his report, without giving him notice and an opportunity to dispute the contents of the report.

56. MakeSpace furthermore willfully took an adverse employment action against Mr. Sanders based on criminal charges there were not pending and that were dismissed in Mr. Sanders' favor.

57. MakeSpace's actions with respect to Mr. Sanders were consistent with MakeSpace's standardized "specific process" for handling background checks.

58. As a result of Defendant's conduct described above, Plaintiff has suffered damages in the form of financial and reputational harm, loss of employment opportunity, and emotional distress.

## V. CLASS ALLEGATIONS

59. Plaintiff brings this action individually and pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) on behalf of the following Class:

> All natural persons residing within the United States and its Territories about whom, (i) beginning five (5) years prior to the filing of this Complaint and continuing through the conclusion of this action, (ii) were the subject of a consumer report used by Defendant for employment purposes, (iii) were the subject of an adverse employment action by Defendant, and (iv) were not provided with a copy of the report and/or a written summary of their rights under the FCRA at least five (5) business days prior to the adverse action.

60. Plaintiff reserves the right to amend the definition of the Class based on discovery or legal developments.

61. **Numerosity. Fed. R. Civ. P. 23(a)(1).** The members of the Class are so numerous that joinder of all is impractical. Upon information and belief, the number of job applicants and employees harmed by Defendant's practices are more numerous than what could be addressed by joinder, and those persons' names and addresses are identifiable through documents or other information maintained by Defendant.

9

62. **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the Class, and predominate over the questions affecting only individuals. The common legal and factual questions include, among others: (1) whether MakeSpace used consumer reports for employment purposes to take adverse action against consumers without first providing them with notice, a copy of the report, and a summary of FCRA rights at least five business days prior to the adverse action;; and (2) whether MakeSpace acted willfully or negligently.

63. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of each Class Member. Plaintiff has the same claims for relief that he seeks for absent Class Members.

64. **Adequacy**. **Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the Class because his interests are aligned with, and are not antagonistic to, the interests of the members of the Class he seeks to represent, he has retained counsel competent and experienced in such litigation, and he intends to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of members of the Class.

65. **Predominance and Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the members of the Class to individually redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or

contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## VI.     CAUSES OF ACTION

### COUNT I
### FCRA § 1681b(b)(3) – Class Claim

65.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

66.     The background or consumer reports that Defendant purchases regarding employment applicants are "consumer reports" within the meaning of 15 U.S.C. § 1681a(d).

67.     The FCRA provides that any person "using a consumer report for employment purposes" who intends to take any "adverse action based in whole or in part on the report," must provide the consumer a written description of the consumer's rights under the FCRA, as prescribed by the Federal Trade Commission, before taking such adverse action. 15 U.S.C. § 1681b(b)(3)(A).

68.     For purposes of this requirement, an "adverse action" includes "any . . . decision . . . that adversely affects any current or prospective employee." 15 U.S.C. § 1681a(k)(1)(B)(ii).

69.     Defendant is a "person" that regularly uses consumer reports for employment purposes.

70.     The FCRA requires Defendant, as a user of consumer reports for employment purposes, before taking adverse action based in whole or in part on the report, to provide to the consumer to whom the report relates, a copy of the report and a written description of the consumer's rights under the FCRA.  15 U.S.C. § 1681b(b)(3)(A)(i), (ii).

71. Defendant willfully violated section 1681b(b)(3) of the FCRA by failing to provide to the consumer about whom the report relates a copy of the report and a written description of the consumer's rights under the FCRA a sufficient time before it took adverse action based in whole or in part on the consumer report.

## COUNT IV
### N.Y. Exec Law § 296.16 – Individual Claim

72. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

73. MakeSpace engaged in an unlawful discriminatory practice that violated the NYSHRL by terminating Plaintiff's employment based on criminal charges that were not pending and were dismissed in Plaintiff's favor.

74. The foregoing violations were willful. MakeSpace knew or should have known about its obligations under the NYSHRL. These obligations are well established in the plain language of the NYSHR, and in well-established case law.

75. MakeSpace acted in deliberate and reckless disregard of its obligations to the rights of Plaintiff.

76. MakeSpace is a sophisticated company with access to legal advice through its own attorneys and outside counsel, and there is not contemporaneous evidence that it determined that its conduct was lawful.

77. MakeSpace knew or had reason to know that its conduct was inconsistent with the plain language of the statute.

78. MakeSpace voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

79. As a result of this conduct by MakeSpace, Plaintiff suffered actual damages including without limitation, by example only and as described herein on his behalf by counsel: loss of employment, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

On the First Claim for Relief:

1. An order certifying the case as a class action on behalf of the proposed Class under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;
2. Actual, statutory and punitive damages to be determined by the jury;
3. Attorneys' fees;
4. Costs of the action;
5. Such other relief as the Court deems just and proper

On the Second Claim for Relief:

1. Actual damages to be determined by the jury;
2. Civil fines and penalties, as provided for in N.Y. Exec Law § 297
3. Attorneys' fees;
4. Costs of the action;
5. Such other relief as the Court deems just and proper

## TRIAL BY JURY

Plaintiff hereby requests a trial by jury on those causes of action where a trial by jury is allowed by law.

DATE: October \_\_\_, 2018.

        BY:    */s/ Adam G. Singer*
**Law Office of Adam G. Singer, PLLC**
60 E 42nd Street, Suite 4600
New York, NY 10165
T: 212.842.2428
F: 212.658.9682
E: asinger@adamsingerlaw.com

**Weiner & Sand LLC**
Andrew L. Weiner
Jeffrey B. Sand*
3525 Piedmont Road
7 Piedmont Center
3rd Floor
Atlanta, GA 30305
T: 404.205.5029
T: 404.254.0842
F: 866.800.1482
E: aw@atlantaemployeelawyer.com
E: js@atlantaemployeelawyer.com


**Francis & Mailman, P.C.**
James A. Francis*
Lauren KW Brennan*
1600 Market Street, 25th Floor
Philadelphia, PA 19103
T: 215.735.8600
F: 215.940.8000
E: jfrancis@consumerlawfirm.com
E: lbrennan@consumerlawfirm.com


**Pro hac vice* applications forthcoming*

*Attorneys for Plaintiff*