## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **BRANDON SANDERS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **C.A. NO. 1:2018-CV-10016** |
| | ) | |
| **MAKESPACE LABS, INC,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## PLAINTIFF'S MEMORANDUM OF LAW
## <u>IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION</u>

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

I.    OVERVIEW .................................................................................................................. 1

II.   BACKGROUND ........................................................................................................... 2

   A.  MakeSpace's Procedures for Using Background Reports for Employment Purposes ........ 2

   B.  Plaintiff's Experience ................................................................................................ 4

      1.  Plaintiff Has No Criminal Record. ..................................................................... 4

      2.  MakeSpace Terminates Plaintiff's Employment Based on an Inaccurate Background Report and Never Provides Him with a Pre-Adverse Action Notice ...................................... 4

III.  ARGUMENT AND AUTHORITIES ............................................................................ 6

   A.  The Rule 23 Standards for Class Certification ................................................................ 6

   B.  The Class Meets the Requirements of Rule 23(a). .......................................................... 7

      1.  The Class is Sufficiently Numerous ................................................................... 7

      2.  There are Question of Law and Fact Common to the Class ............................................. 7

      3.  Plaintiff's Claims are Typical of the Proposed Class ...................................................... 9

      4.  Plaintiff and His Counsel Will Adequately Represent the Class ................................... 10

   C.  The Class meets the Requirements of Rule 23(b)(3) ..................................................... 12

      1.  Common Questions of Law and Fact Predominate ........................................................ 12

      2.  A Class Action is Superior to Other Available Means of Adjudication ......................... 14

IV.   CONCLUSION ........................................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Adams v. Nat'l Eng'g Svc. Corp.*,
    620 F. Supp. 2d. 319 (D. Conn. 2009) .......................................................................6

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997)............................................................................. 6-7, 12, 16

*Ansoumana v. Gristede's Operating Corp.*,
    201 F.R.D. 81 (S.D.N.Y. 2001) ...........................................................................7

*Barel v. Bank of America*,
    255 F.R.D. 393 (E.D. Pa. 2009) .........................................................................11

*Berry v. LexisNexis Risk & Information Analytics Group, Inc.*,
    No. 3:11-cv-754, 2014 WL 4403524 (E.D. Va. Sept. 5, 2014) .............................11

*Bonner v. Team Toyota, LLC*,
    No. 2:06cv157 PRS, 2006 WL 3392942 (N.D. Ind. Nov. 21, 2006)................................14, 17

*Braxton v. Farmer's Ins. Grp.*,
    209 F.R.D. 654 (N.D. Ala. 2002) .......................................................................16

*Bush v. Calloway Consol. Group River City, Inc.*,
    2012 WL 1016871 (M.D. Fla. March 26, 2012)...............................................15, 16

*Campos v. Choicepoint, Inc.*,
    237 F.R.D. 478 (N.D. Ga. 2006) ..........................................................................8

*Caridad v. Metro-North Commuter R.R.*,
    191 F.3d 283 (2d Cir. 1999).................................................................................9

*Cavin v. Home Loan Ctr., Inc.*,
    236 F.R.D. 387 (N.D. Ill. 2006) ...........................................................................7

*Chakejian v. Equifax Info. Servs. LLC*,
    256 F.R.D. 492 (E.D. Pa. 2009).......................................................................9, 14

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995)...................................................................................7

*In re Currency Conversion Fee Antitrust Litig.*,
   230 F.R.D. 303 (S.D.N.Y. 2004) ................................................................... 10-11

*In re Farmers Ins. Co., Inc., FCRA Litig.*,
   2006 WL 1042450 (W.D. Okla. Apr. 13, 2006) ...................................................16

*Gillespie v. Equifax Info. Servs. LLC*,
   2008 WL 4614327 (N.D. Ill. Oct. 15, 2008)............................................................8

*Goode v. LexisNexis Risk & Info. Analytics Group, Inc.*,
   848 F. Supp. 2d 532 (E.D. Pa. 2012) .......................................................................6

*Green v. Wolf Corp.*,
   406 F.2d 291 (2d Cir. 1968).....................................................................................14

*Gunnells v. Healthplan Servs., Inc.*,
   348 F.3d 417 (4th Cir. 2003) ...................................................................................10

*In re Initial Pub. Offering Sec. Litig.*,
   471 F.3d 24 (2d Cir. 2006)..........................................................................................6

*Jacob v. Duane Reade, Inc.*,
   2015 WL 525697 (2d Cir. Feb. 10, 2015)..................................................................6

*Johns v. Rozet*,
   141 F.R.D. 211 (D.D.C. 1992)..................................................................................10

*Kudlicki v. Capital One Auto Fin., Inc.*,
   241 F.R.D. 603 (N.D. Ill. 2006)...............................................................................16

*Lewis v. Curtis*,
   671 F.2d 779 (3rd Cir. 1982) ...................................................................................10

*Magallon v. Robert Half Int'l, Inc.*,
   311 F.R.D. 625 (D. Or. 2015) .......................................................................6, 8, 13

*Manuel v. Wells Fargo Bank, Nat'l Ass'n*,
   2015 WL 4994549 (E.D. Va. Aug. 19, 2015)...............................8, 13, 15, 17

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997).................................................................................7, 9

*In re Metlife Demutualization Litig.*,
   229 F.R.D. 369 (E.D.N.Y. 2005) .............................................................................7

*In re Mex. Money Transfer Litig.*,
   267 F.3d 743 (7th Cir. 2001) ..............................................................................7, 16

*Milbourne v. JRK Residential Am., LLC,*
   2014 WL 5529731 (E.D. Va. Oct. 31, 2014)....................................................................8, 17

*Murray v. E\*Trade Fin. Corp.,*
   240 F.R.D. 392 (N.D. Ill. 2006).........................................................................................16

*Murray v. GMAC Mortg. Corp.,*
   434 F.3d 948 (7th Cir. 2006) ................................................................................. 8, 9, 16-17

*Perry v. FleetBoston Fin. Corp.,*
   229 F.R.D. 105 (E.D. Pa. 2005).........................................................................................16

*Ramirez v. Trans Union, LLC,*
   301 F.R.D. 408 (N.D. Cal. 2014).......................................................................................13

*Reardon v. ClosetMaid Corp.,*
   2011 WL 1628041 (W.D. Pa. Apr. 27, 2011).................................................................6, 17

*Reardon v. ClosetMaid Corp.,*
   2013 WL 6231606 (W.D. Pa. Dec. 2, 2013).......................................................................17

*Robidoux v. Celani,*
   987 F.2d 931 (2d Cir. 1993).................................................................................................9

*In re Se. Hotel Properties Ltd. P'ship Inv'r Litig.,*
   151 F.R.D. 597 (W.D. N.C. 1993)......................................................................................10

*Serrano v. Sterling Testing Systems, Inc.,*
   711 F. Supp. 2d 402 (E.D. Penn. May 7, 2010)..................................................................16

*Singleton v. Domino's Pizza, LLC,*
   976 F. Supp. 2d 665 (D. Md. 2013) ....................................................................................16

*Summerfield v. Equifax Info, Servs., LLC*
   264 F.R.D. 133 (D.N.J. Sept. 30, 2009)..............................................................................14

*Thomas v. FTS USA, LLC,*
   312 F.R.D. 407 (E.D. Va. 2016) ....................................................................................8, 13

*Toure v. Cent. Parking Sys.,*
   2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007).....................................................................10

*Trautz v. Weisman,*
   846 F. Supp. 1160 (S.D.N.Y. 1994) ....................................................................................10

*Trief v. Dun & Bradstreet Corp.,*
   144 F.R.D. 193 (S.D.N.Y. 1992) ..........................................................................................7

*In re Visa Check/MasterMoney Antitrust Litig.*,
　280 F.3d 124 (2d Cir. 2001)...........................................................12, 14

*Walker v. Calusa Investments, LLC*,
　244 F.R.D. 502 (S.D. Ind. 2007).........................................................16

*White v. E-Loan, Inc.*,
　2006 WL 2411420 (N.D. Cal. Aug. 18, 2006) .................................16, 17

*White v. Experian Info. Sol'ns*,
　2014 WL 1716154 (C.D. Cal. May 1, 2014) .........................................11

*White v. Imperial Adjustment Corp.*,
　2002 WL 1809084 (E.D. La. Aug. 6, 2002) .........................................14

*Williams v. LexisNexis Risk Mgmt Inc.*,
　2007 WL 2439463 (E.D.Va. Aug. 23, 2007)..........................................15

## STATUTES & FEDERAL RULES

Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ........................... *passim*

　15 U.S.C. § 1681b(b)(2) ..................................................................6

　15 U.S.C. § 1681b(b)(3) .......................................................... *passim*

　15 U.S.C. § 1681n ........................................................................13

　15 U.S.C. § 1681n(a)(1)..................................................................8

Fed. R. Civ. P. 23 ..............................................................1, 6, 10, 17

　Fed. R. Civ. P. 23(a) ...............................................................7, 12

　Fed. R. Civ. P. 23(a)(1) ..................................................................7

　Fed. R. Civ. P. 23(a)(2) ..................................................................7

　Fed. R. Civ. P. 23(a)(3) ..................................................................9

　Fed. R. Civ. P. 23(a)(4).................................................................10

　Fed. R. Civ. P. 23(b) .....................................................................12

　Fed. R. Civ. P. 23(b)(3).......................................................12, 14, 16

　Fed. R. Civ. P. 30(b)(6).....................................................................3

<u>**OTHER AUTHORITIES**</u>

6 H. Newberg and A. Conte, NEWBERG ON CLASS ACTIONS (4th ed. 2003) .................................17

Plaintiff Brandon Sanders, on behalf of himself and similarly situated individuals moves the Court to certify this case as a class action under Federal Rule of Civil Procedure 23. In support of his Motion, Plaintiff provides this Memorandum of Law.

## I.      OVERVIEW

Plaintiff brings this class action lawsuit under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x. The lawsuit involves an employer, Defendant MakeSpace Labs, Inc, which uses background checks as part of its hiring process for every position at the company. At issue here is the requirement, under Section 1681b(b)(3) of the FCRA, for employers to provide a "pre-adverse action notice," including a copy of the background report and a statement of the FCRA rights to job candidates. Critically, the FCRA requires that employers provide the pre-adverse action notice to job candidates <u>before</u> they take any adverse action against the candidate. This allows job candidates a chance to see what is being reported about them and to try to address it with a prospective employer before the employer makes any adverse decision or determination.

MakeSpace hired Plaintiff contingent on passing a background check. MakeSpace ordered a consumer report about Plaintiff from a background check company called Checkr. The report incorrectly stated that Plaintiff had multiple pending criminal charges for rape and sexual assault. This was devastatingly false. Plaintiff did not and does not have any pending criminal charges, or any criminal convictions. MakeSpace terminated Plaintiff's job offer based on the inaccurate report. It did not give him a pre-adverse action notice before it terminated his employment.

Through written discovery and its corporate representative, MakeSpace has admitted that its procedures and systems were uniform through the class period. Just as it treated Plaintiff, MakeSpace denied employment to 222 applicants based on criminal background reports. And, just as it treated Plaintiff, MakeSpace failed to provide a pre-adverse action notice to 143 of those

individuals.  The facts and claims here are not novel.  Courts have repeatedly found them to be the proper subject of class treatment.  The Court should conclude likewise here.

## II.        BACKGROUND

### A.     MakeSpace's Procedures for Using Background Reports for Employment Purposes

MakeSpace has a policy of requiring employment applicants to pass criminal background checks before they begin employment with the company.  (Ex. 1, Deposition of MakeSpace Corporate Representative, at 27:21-28:20; 76:2-7; 93:14-17).  This policy applies uniformly to all of MakeSpace's employees and job positions.  (*Id*.).  During the relevant class period MakeSpace purchased employment background reports from two different companies: Checkr and Verified First.  (*Id.* at 35:12-22).  Regardless of the source of the background reports, Makespace's policies for how it uses those reports and provides the required FCRA pre-adverse action notice is the same.  (*Id.* at 64:13-15; 83:11-13; 93:10-13).

MakeSpace uses an online portal to process its employment background checks.  Through that portal MakeSpace orders a background report on a candidate from either Checkr or Verified First.  Checkr or Verified First then electronically delivers the report to MakeSpace.  A recruiter from MakeSpace then reviews the report.  (Ex. 1 at 73:13-18).  The report will be scored as one of three options: "pending", "consider", or "clear."  (*Id.* at 74:22-75:12).  If the report is scored as "clear," then MakeSpace will move forward with hiring the employee.  (*Id*. at 73:22-73:24).  If the report is scored as "consider," then the MakeSpace recruiter cross references the background report with a "Hiring Matrix" that lists criminal offenses MakeSpace deems disqualifying for employment.  (*Id.* at 31:19-32:8; 73:24-74:2; 87:21-88:6; Ex. 2, MakeSpace Hiring Matrix).  When a background report includes a disqualifying criminal record, the MakeSpace recruiter then selects an option to "take pre-adverse action."  (Ex. 1 at 73:24-74:9; 77:23-78:9; 87:21-88:6).  The

selection of this option is, in practice, MakeSpace's confirmation that the applicant is not eligible to work at MakeSpace. (*Id.* at 78:18-22). MakeSpace does not have any procedures by which the individual whose report contains the disqualifying record can contact MakeSpace to dispute or discuss the contents of the report, and in fact has no way of knowing if the individual disputes the report as inaccurate. (*Id.* at 89:2-8, 91:5-92:3, 92: 14-24).

MakeSpace does not send this "pre" adverse action notice itself. Instead, it pays a fee to the background reporting company (either Checkr or Verified First) to send the letter on its behalf. (*Id.* at 43:8-44:18; 44:23-45:8). The background report company will only send the notice if the MakeSpace recruiter instructs it to do so. (*Id.* at 81:14-20; 83:8-13). Although MakeSpace has the option to request that the background report company send the notice on its behalf, MakeSpace is ultimately responsible for ensuring the notice is sent. (*Id.* at 56:10-57:6; 60:6-10).

MakeSpace does not provide any FCRA training to its recruiters. (Ex. 1 at 75:18-20). Likely as a result of this lack of training, its recruiters seldom send the pre-adverse action notice before it terminates an employee based on a background report. From December 8, 2015 to the present MakeSpace has taken an adverse employment action based on a consumer report against 222 applicants.[1] (*Id.* at 99:7-14; Ex. 3, MakeSpace Revised Answers to Interrogatories, at Resp. to Interrog. No. 3). Of those 222 applicants, MakeSpace sent a pre-adverse action notice to only 79 individuals. (Ex. 3 at Resp. to Interrog. No. 4). Put differently, MakeSpace did not send a pre-adverse action notice to 143 individuals.[2] MakeSpace can identify these individuals by name, address, and e-mail address. (Ex. 1 at 101:12-102:1, 104:1-6).

---

[1] Before MakeSpace's Rule 30(b)(6) deposition, it produced interrogatory answers stating that this number was 219 applicants. Following its deposition, it served amended responses stating that the number is 222.

[2] MakeSpace initially refused to provide this data, thus requiring Plaintiff to file a motion to compel. (Dkt. 38). The Court granted Plaintiffs motion. (Dkt. 40).

**B.     Plaintiff's Experience**

**1.     Plaintiff Has No Criminal Record.**

In April 2014, during his senior year in college, Plaintiff was charged with multiple criminal offenses, including rape and sexual assault.  (Ex. 4, Plaintiff's Deposition at 61:9-62:18; Ex. 5, Court Records Showing Dismissal and Not Guilty Dispositions).   Plaintiff strongly maintained his innocence.  He pled not guilty to all the charges and rejected several opportunities to take a plea deal, which would have involved registering as a sex offender.  On February 3, 2015, the rape charge was dropped.  (Ex. 5.) Plaintiff took the case to trial, which began on October 2, 2015.  The next day, the court declared a mistrial.  (*Id.*)

Plaintiff had to wait nearly another year for the next trial, which began on August 20, 2016.  After a two-day trial, the jury found Plaintiff **not guilty** of all the charges.  (Ex. 4 at 61:9-22; Ex. 5).  Plaintiff was relieved and was ready to put the lengthy and stressful experience behind him.  He would not go to prison or be labeled a sex offender, and he had cleared his name.

**2.     MakeSpace Terminates Plaintiff's Employment Based on an Inaccurate Background Report and Never Provides Him with a Pre-Adverse Action Notice.**

In April 2018 Plaintiff applied for a job with MakeSpace.  After completing two rounds of interviews, MakeSpace offered Plaintiff a job on May 9, 2018.  (Ex. 1 at 117:6-14; Ex. 6).  Mr. Sanders accepted MakeSpace's employment offer and signed the offer letter on May 13, 2018. (*Id.* at 120:8-11).  Plaintiff's first day of work was scheduled for May 21, 2018. (*Id.* at 117:19-22).

On May 17, 2018, MakeSpace obtained a background report from Checkr about Plaintiff. (*Id.* at 125:16-19).  The report was grossly inaccurate.  It stated that Mr. Sanders had multiple pending criminal charges for rape and sexual assault.  (Ex. 7, May 17 Checkr Background Report). This, of course, was false.   The inaccurate information in the report was automatically

disqualifying for Plaintiff's employment with MakeSpace. (Ex. 1 at 127:4-14). Even so, MakeSpace did not send plaintiff a pre-adverse action notice. (*Id.* at 127:15-18).

Although MakeSpace received the report on May 17, nobody at MakeSpace reviewed the report until Plaintiff's first day of employment on May 21. (*Id.* at 125:20-126:3; 131:1-7). On May 21, MakeSpace's recruiters reviewed the report for the first time and immediately suspended Plaintiff without pay because of the inaccurate criminal records listed by Checkr. (*Id.* at 131:8-132:1). MakeSpace did not provide Plaintiff with a pre-adverse action notice before suspending him. (*Id.* at 131:23-132:5).

When he returned home from being suspended, Mr. Sanders e-mailed MakeSpace a copy of the relevant court records showing that the information in the background check was incorrect, and that all the charges had been resolved in his favor. (*Id.* at 133:6-134:7). After receiving this e-mail from Plaintiff, MakeSpace did not tell him that he could dispute the inaccurate report with Checkr, and did not send him a pre-adverse action notice. (*Id.* at 134:1-4).[3] Instead, on May 23, MakeSpace sent Mr. Sanders a termination letter. (*Id.* at 135:5-136:7). MakeSpace did not send Mr. Sanders a pre-adverse action notice before it terminated his employment. (*Id.* at 136:8-11).

MakeSpace admits that it never sent Plaintiff a pre-adverse action notice (*Id.* at 127:15-18), just as it did not send a pre-adverse action notice to the majority of the applicants whom it did not hire based on the content of criminal background reports. (Ex. 3 at Resps. of Interrogs. 3-4) (143 out of 222 applicants denied employment based on a criminal background report).

---

[3] Even after Plaintiff successfully disputed the appearance of the inaccurate records on the report, and after Checkr provided an accurate and completely clear background report to MakeSpace, MakeSpace still did not offer Plaintiff employment. (Ex. 1 at 136:17-137:9.) This further demonstrates that MakeSpace's "pre" adverse action notice procedure does not provide a real opportunity to dispute as contemplated by the FCRA.

## III.    ARGUMENT AND AUTHORITIES

Plaintiff seeks to represent a class defined as follows:

All natural persons residing within the United States and its Territories about whom, (i) beginning five (5) years prior to the filing of this Complaint and continuing through the conclusion of this action, (ii) were the subject of a consumer report used by Defendant for employment purposes, (iii) were the subject of an adverse employment action by Defendant, and (iv) were not provided with a copy of the report and/or a written summary of their rights under the FCRA at least five (5) business days prior to the adverse action.

Claims such as Plaintiff's, alleging violations of the FCRA's requirements protecting consumer job applicants who are subject to background checks, are well-suited for class treatment. Federal judges in this Circuit and elsewhere have certified both contested and settled FCRA classes alleging, just as Plaintiff alleges here, that an employer took an adverse employment action based on a consume report without first providing the class members with the required pre-adverse action notice. *Magallon v. Robert Half Int'l, Inc.*, 311 F.R.D. 625, 633 (D. Or. 2015); *Goode v. LexisNexis Risk & Info. Analytics Group, Inc.*, 848 F. Supp. 2d 532, 537-538 (E.D. Pa. 2012); *Adams v. Nat'l Eng'g Svc. Corp.*, 620 F. Supp. 2d. 319, 332 (D. Conn. 2009); *Reardon v. ClosetMaid Corp.*, No. 08-1730, 2011 WL 1628041, at *9 (W.D. Pa. Apr. 27, 2011) (certifying class action under FCRA section 1681b(b)(2) and (3)).

## A.    The Rule 23 Standards for Class Certification

Before certifying a class, the "district judge must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006). "In determining whether to certify a class, the district court must conduct a rigorous analysis that may overlap with the merits of the plaintiff's underlying claim." *Jacob v. Duane Reade, Inc.*, No. 13-3873- CV, 2015 WL 525697, at *1 (2d Cir. Feb. 10, 2015) (citations and quotations omitted).

Federal courts have long regarded "consumer claims" like those presented here as "particularly appropriate for class resolution." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997); *In re Mex. Money Transfer Litig.*, 267 F.3d 743, 747 (7th Cir. 2001); *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 395 (N.D. Ill. 2006) ("Consumer claims are among the most commonly certified for class treatment…").

**B.      The Class Meets the Requirements of Rule 23(a).**

**1.      The Class is Sufficiently Numerous**

Plaintiffs must show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). The proposed class includes 143 individuals. This number exceeds the threshold for numerosity.

**2.      There are Question of Law and Fact Common to the Class**

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Courts should "liberally construe[] the commonality requirement" *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198-99 (S.D.N.Y. 1992) (internal citations omitted), which is satisfied by at least one common issue of law or fact. *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 86 (S.D.N.Y. 2001) (same). "Commonality does not mandate that all class members make identical claims and arguments, only that common issues of fact or law affect all class members." *Trief*, 144 F.R.D. at 198. "Although Rule 23(a)(2) uses the plural of the word "question," the commonality requirement is satisfied as long as the proposed class members shares at least one common question of law or fact." *In re Metlife Demutualization Litig.*, 229 F.R.D. 369, 373 (E.D.N.Y. 2005) (*citing Drexel Burnham Lambert Group*, 960 F.2d 285, 290 (2d Cir. 1992) and *Fox v. Cheminova, Inc.*, 213 F.R.D. 113, 126 (E.D.N.Y. 2003)).

Courts have routinely affirmed the existence of commonality in FCRA class actions asserting that standardized communications with consumers did not comply with the statute. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952-53 (7th Cir. 2006); *Magallon*, 311 F.R.D. at 636-38 (finding practice of sending notice and copy of background report to consumers only after finding the candidate "not placeable" based on report was common to all class members and supported certification); *Thomas v. FTS USA, LLC,* 312 F.R.D. 407, 426 (E.D. Va. 2016) (certifying class of consumers with claims under FCRA section 1681b(b)(3)); *Manuel v. Wells Fargo Bank, Nat'l Ass'n,* 2015 WL 4994549, at *19 (E.D. Va. Aug. 19, 2015) (same); *Gillespie v. Equifax Info. Servs. LLC*, No. 05-138, 2008 WL 4614327, at *9 (N.D. Ill. Oct. 15, 2008); *Campos v. Choicepoint, Inc.*, 237 F.R.D. 478, 490 (N.D. Ga. 2006).

Here, all members of the proposed class were subjected to MakeSpace's common practice of failing to provide job applicants with the required pre-adverse action notice before taking adverse action against them.  MakeSpace's practice was uniform: it did not provide a notice of possible adverse employment action or a copy of the job applicant's consumer report or an FCRA summary of rights to the Plaintiff or any class member prior to taking adverse employment action based on the consumer report.   Whether this practice violated the FCRA is a common question which can be determined on a class-wide basis.  *Milbourne v. JRK Residential Am., LLC*, No. 3:12-cv-861, 2014 WL 5529731, at *6 (E.D. Va. Oct. 31, 2014); *Manuel*, 2015 WL 4994549, at *10-11.

Willfulness is also a common question.  To establish the statutory and punitive damages sought here, the proposed class must demonstrate that MakeSpace's conduct was willful.  15 U.S.C. § 1681n(a)(1).  Because MakeSpace is a single entity which acted consistent with a single set of procedures for conducting employment background checks, the answer to whether

8

MakeSpace's violations were willful can be determined on a class-wide basis. *Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492, 500 (E.D. Pa. 2009) ("Thus, the inquiry is to [defendant's] state of mind in implementing its policies and procedures, not on the customer's particular interaction with the CRA.... To prove willfulness here, a consumer-by-consumer inquiry is not necessary."). The amount of damages is also a common question. Because Plaintiff seeks statutory and punitive damages, no individual analysis of damages will be required. *See Murray*, 434 F.3d at 952-53.

Additional common issues are discussed in Section III(C)(1) below.  Considering that Plaintiff need only identify one common question of law or fact, the commonality element is satisfied.

### 3.      Plaintiff's Claims are Typical of the Proposed Class

Typicality under Rule 23(a)(3) is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (citation omitted).  The "typicality requirement is satisfied … irrespective of minor variations in the fact patterns underlying the individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).  The facts of the named plaintiff's claims need not be identical to that of the putative class as long as "the disputed issue of law or fact occup[ies] essentially the same degree of centrality to the named plaintiff's claim as to that of the other members of the proposed class." *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 2983 (2d Cir. 1999) (citations omitted).

Plaintiff's claims are typical with those of the class.  Like all of the proposed class members, MakeSpace obtained a background report about Plaintiff and used it to evaluate his application for employment.  And like all of the proposed class members, MakeSpace took adverse employment action against Plaintiff based on the background report and did not provide him with

the FCRA-mandated pre-adverse action notice.  Plaintiff has the very same claim as all class members.  They all suffered the same violation of the same FCRA provision: 15 U.S.C. § 1681b(b)(3).  Indeed, MakeSpace concedes that it did not provide a pre-adverse action notice to Plaintiff or to any member of the class.

Because MakeSpace did not send the FCRA-mandated pre-adverse action notice to Plaintiff or any member of the class, Plaintiff's claim typifies the class.  Even though the claims need not be identical to fulfill the typicality requirement, here they are.

### 4.    Plaintiff and His Counsel Will Adequately Represent the Class

In evaluating adequacy, the Court must consider whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement exists to ensure that the class representatives will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'" *Toure v. Cent. Parking Sys.*, 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (*quoting Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)).

"The burden is on the defendant[] to demonstrate that the representation will be inadequate." *Johns v. Rozet*, 141 F.R.D. 211, 217 (D.D.C. 1992); *see also In re Se. Hotel Properties Ltd. P'ship Inv'r Litig.*, 151 F.R.D. 597, 607 (W.D. N.C. 1993); *Lewis v. Curtis*, 671 F.2d 779, 788 (3rd Cir. 1982); *Trautz v. Weisman*, 846 F. Supp. 1160, 1167 (S.D.N.Y. 1994). To defeat the adequacy requirement of Rule 23, a conflict "must be more than merely speculative or hypothetical." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 430 (4th Cir. 2003) (citing 5 MOORE'S FEDERAL PRACTICE § 23.25[4][b][ii] (2002)); *see also In re Currency Conversion Fee Antitrust Litig.*, 230 F.R.D. 303, 309 (S.D.N.Y. 2004) ("hypothetical conflict[s] of interest," without more are "too diaphanous to bar certification" on adequacy grounds).

MakeSpace cannot satisfy the burden since both components of the adequacy test are met here.  Plaintiff's counsel are experienced in class action work, as well as consumer protection issues under the Fair Credit Reporting Act, and courts have approved them as class counsel in numerous cases.  Many courts have found Francis Mailman Soumilas, P.C. to be well-qualified to represent consumer classes, and the firm has been certified as class counsel on over thirty occasions. *See, e.g., Barel v. Bank of America*, 255 F.R.D. 393, 398-99 (E.D. Pa. 2009) (finding Francis Mailman Soumilas, P.C. "to be competent, experienced and well-qualified to prosecute class actions" and noting that class counsel "have done an excellent job in representing the class in the instant litigation."). The firm has been appointed class counsel over objection and competing counsel's challenge in interim appointment litigation. *See, e.g., White v. Experian Info. Sol'ns*, No. 05-01070, 2014 WL 1716154, at *13, 19, 22 (C.D. Cal. May 1, 2014) (finding Francis Mailman Soumilas, P.C. "FCRA specialists" and appointing firm and its team as interim class counsel over objections from competing group because their team's "credentials and experience [we]re significantly stronger in class action and FCRA litigation."); *Berry v. LexisNexis Risk & Information Analytics Group, Inc.*, No. 3:11-cv-754, 2014 WL 4403524, at *11 (E.D. Va. Sept. 5, 2014) (finding Francis & Mailman, P.C. and its team adequate class counsel in contested settlement appeal); *see also*, Ex. 8, Qualifications of Francis Mailman Soumilas, P.C.  Weiner & Sand LLC is likewise qualified to represent consumer classes and has been certified to do so in other cases.  *See* Ex. 9, Qualifications of Weiner & Sand LLC.

Plaintiff also does not have any interests antagonistic to those of the proposed class and has cooperated with his counsel and pursued his litigation vigorously to redress the wrongs alleged. He has participated in discovery, sat for his deposition, and is dedicated to the best interests of the class members.  Both Plaintiff and the proposed class share the same interest in establishing

MakeSpace's liability.  To establish liability, all members of the proposed class seek the same finding on the common questions of law and fact.  No apparent or even imagined antagonism exists between Plaintiff and the members of the putative class.

Plaintiff and his counsel will adequately protect the interests of the class.

## C.    The Class meets the Requirements of Rule 23(b)(3)

After satisfying the requirements of Rule 23(a), a plaintiff must also show that at least one of the three requirements of Rule 23(b) is satisfied before the court can certify the class.  *Amchem*, 521 U.S. at 614-15.  Under Rule 23(b)(3), the Court must find that questions of law or fact common to the class predominate over any questions affecting only individual class members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3).

### 1.    Common Questions of Law and Fact Predominate

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof."  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (*quoting Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000)).  Here, common issues predominate for every element of the claim for violation of Section 1681b(b)(3).  To prevail, Plaintiff must establish:

(1) that MakeSpace procured consumers reports on the members of the Class;

(2) that MakeSpace took adverse employment action against the class members based on the reports; and

(3) before taking the adverse action, MakeSpace failed to provide pre-adverse action notice to the class members.

12

Each of these issues can be resolved on a class-wide basis. The central issue for each class member's section 1681b(b)(3) claim is the same: whether MakeSpace failed to provide a pre-adverse action notice. This common question predominates over individualized concerns. All Class Members share an identical set of facts and legal theories for the FCRA violation in the Complaint, will have to obtain the same evidence, prove the same elements, prove willfulness, and rebuff the same defenses. These are overarching issues because "the purported class members were exposed to the same risk of harm every time the defendant violated the statute in the identical manner," therefore predominance is satisfied. *Manuel*, 2015 WL 4994549, at *17 (*citing Stillmock*, 384 F. App'x at 273; *Dreher v. Experian Info. Solutions, Inc.*, No. 3:11-cv-00624-JAG 2014 WL 2800766, at *2-3 (E.D. Va. June 19, 2014)).

There are no individualized damages issues. Plaintiff is seeking statutory damages for each member of the class, not actual damages. Statutory damages of $100 to $1,000 for each class member, plus punitive damages are available for willful violations of the FCRA. 15 U.S.C. § 1681n. Statutory damages compensate class members for violating their rights under the FCRA. There is no need for any individual inquiry into damages. Moreover, FCRA statutory damages such as those that Plaintiff seeks here for himself and the class are available even with no proof of actual damages, which could be an issue for negligence claims, but are irrelevant for willful violations of the FCRA. Multiple federal courts have found no difficulty in certifying FCRA statutory damages class actions such as the one at bar. *Magallon*, 311 F.R.D. at 633; *Thomas*, 312 F.R.D. at 426; *Manuel*, 2015 WL 4994549, at *19; *Ramirez v. Trans Union, LLC*, 301 F.R.D. 408, 426 (N.D. Cal. 2014); *Chakejian*, 256 F.R.D. at 498, 500-01; *Summerfield v. Equifax Info, Servs., LLC*, 264 F.R.D. 133, 139, 142 (D.N.J. Sept. 30, 2009).

13

### 2.     A Class Action is Superior to Other Available Means of Adjudication

The second part of the Rule 23(b)(3) analysis compares whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class action: whether individual class members wish to bring, or have already brought, individual actions; the desirability of concentrating the litigation of the claims in the particular forum; and the difficulties of managing the case as a class action. Fed. R. Civ. P. 23(b)(3). Denying class certification on manageability grounds is "disfavored" by the courts and "should be the exception rather than the rule." *In re Visa Check*, 280 F.3d at 140 (internal quotations omitted).

Plaintiff is unaware of any other individual who is interested in controlling the prosecution of this case or of any other pending lawsuits brought against MakeSpace by putative class members.  Rather, class members would never think to bring individual claims because they are unaware that MakeSpace has violated their rights – having little lay knowledge of the complex statutory protections afforded by the FCRA, and also having no practical way of learning that MakeSpace denied them employment because of a consumer report.  *See, e.g., Bonner v. Team Toyota, LLC*, No. 2:06cv157 PRS, 2006 WL 3392942, at *5 (N.D. Ind. Nov. 21, 2006) ("[M]any of the persons in these classes may be unaware that the form letter sent by Defendants may violate the FCRA, and a class action suit may help to safeguard their rights."); *White v. Imperial Adjustment Corp.*, No. Civ.A. 99-3804, 2002 WL 1809084, at *16 (E.D. La. Aug. 6, 2002) ("Because . . . individual putative class members may not be aware of the violation of their [FCRA] rights, it appears improbable that the putative class members would possess the initiative to litigate their claims individually.").  Unless the Court certifies this case as a class action, the class members will never be compensated for MakeSpace's violations of the FCRA.  When determining

14

"'whether the class action device is superior to other methods available to the court for a fair and efficient adjudication of the controversy . . . [the court should] not contemplate the possibility that no action at all might be superior to a class action.'" *Manuel*, 2015 WL 4994549, at *16 (quoting *Brown v. Cameron-Brown Co.*, 92 F.R.D. 32, 49 (E.D. Va. 1981)).

Efficiency is the primary focus in determining whether the class action is the superior method for resolving the controversy presented.  It is proper for a court to consider the " . . . inability of the poor or uninformed to enforce their rights and the improbability that large numbers of class members would possess the initiative to litigate individually."  As one court explained in finding that class treatment was superior in an FCRA class action, "[t]he proposed classes involve at least hundreds, perhaps thousands, of proposed class members pursuing identical, fairly small claims for relief, who, if required to proceed individually, probably would not assert their claims. The class action device therefore appears to be a superior means of resolving their disputes." *Williams v. LexisNexis Risk Mgmt Inc.*, No. 3:06-cv-241, 2007 WL 2439463, at *9 (E.D.Va. Aug. 23, 2007) (citation omitted).

FCRA statutory and punitive damages cases, like this one, are ideally suited for class certification because the available remedies are uniform, but modest.  *See Bush v. Calloway Consolidated Group River City, Inc.*, No. 3:10-cv-841- J-37MCR, 2012 WL 1016871, at *11 (M.D. Fla. March 26, 2012) ("Courts routinely find class resolution superior in consumer protection actions . . . .").  "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Id.* (quoting *Amchem*, 521 U.S. at 617). Federal courts have long regarded "consumer claims" as "particularly appropriate for class resolution." *Id.*; *see*

15

*Amchem*, 521 U.S. at 625; *In re Mex. Money Transfer*, 267 F.3d at 747; *Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 113 (E.D. Pa. 2005).

Rule 23(b)(3) was designed for situations such as this, where the amount in controversy for any individual claimant is small, but injury in the aggregate is substantial.  Here, Plaintiff seeks statutory damages of no more than $1,000 for violation, as well as punitive damages.  *See, e.g., Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 678 (D. Md. 2013) (finding class action superior "particularly in light of the relatively modest amount of statutory damages available under the FCRA"); *see also Murray v. E*Trade Fin. Corp.*, 240 F.R.D. 392, 400 (N.D. Ill. 2006); *Walker v. Calusa Investments, LLC*, 244 F.R.D. 502, 511 (S.D. Ind. 2007); *Kudlicki v. Capital One Auto Fin., Inc.*, 241 F.R.D. 603, 608-609 (N.D. Ill. 2006); *Serrano v. Sterling Testing Systems, Inc.*, 711 F. Supp. 2d 402, 412-13 (E.D. Penn. May 7, 2010).

Class litigation is not only the most efficient means of adjudicating these disputes, it is effectively the *only* means.  The alternative to class treatment in these cases is not hundreds of individual actions.  Rather, it is no action at all, and thus no enforcement.  "As courts have repeatedly recognized, the statutory damages available under the FCRA are too slight to support individual suits." *White v. E-Loan, Inc.*, No. C05-02080SI, 2006 WL 2411420, at *9 (N.D. Cal. Aug. 18, 2006) (internal citations and quotations omitted); *see also In re Farmers Ins. Co., Inc., FCRA Litig.*, No. CIV-03-158-F, 2006 WL 1042450, at *11 (W.D. Okla. Apr. 13, 2006); *Braxton v. Farmer's Ins. Grp.*, 209 F.R.D. 654, 662 (N.D. Ala. 2002).  As Judge Easterbrook noted in *Murray v. GMAC Mortg.*, "Rule 23(b)(3) was designed for situations such as [those involving FCRA statutory damage claims], in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." 434 F.3d at 953; *see also Bonner*, 2006 WL 3392942, at *5. In short, absent class action treatment, "there is unlikely to be any meaningful

enforcement of the FCRA by consumers whose rights have been violated[.]" *White v. E-Loan, Inc.*, 2006 WL 2411420, at *9. There simply is no other practical means for the members of the proposed class to challenge a practice that stands in clear violation of federal law. "The desirability of providing recourse for the injured consumer who would otherwise be financially incapable of bringing suit and the deterrent value of class litigation clearly render the class action a viable and important mechanism in challenging fraud on the public." 6 H. Newberg and A. Conte, NEWBERG ON CLASS ACTIONS § 21:30 (4th ed. 2003).

Litigation of the narrow claim in this action, targeting a uniform and identical violation of the FCRA, is certainly superior to any alternative.  *Manuel*, 2015 WL 4994549, at *10–11; *Milbourne*, 2014 WL 5529731, at *6; *Reardon*, 2011 WL 1628041, at *8 (finding class treatment superior for claims brought under Section 1681b(b)(3)); *see Reardon v. ClosetMaid Corp.*, No. 08-cv-01730, 2013 WL 6231606 (W.D. Pa. Dec. 2, 2013) (denying motion to decertify classes).

## IV.    CONCLUSION

For these reasons, Plaintiff respectfully requests that this Court grant Plaintiff's Motion under Fed. R. Civ. P. 23 for certification of the proposed Class, designated Plaintiff as class representative, and designate Plaintiff's counsel as class counsel.

Date: December 23, 2019

BY:    /s/ Jeffrey B. Sand
**Weiner & Sand LLC**
Jeffrey B. Sand*
800 Battery Ave, Suite 100
Atlanta, GA 30339
T: (404) 205-5029
F: (866) 800-1482
E: js@atlantaemployeelawyer.com

**Francis Mailman Soumilas, P.C.**
James A. Francis*
Lauren KW Brennan*
1600 Market Street, 25th Floor
Philadelphia, PA 19103
T: 215.735.8600
F: 215.940.8000
E: jfrancis@consumerlawfirm.com
E: lbrennan@consumerlawfirm.com

**Law Office of Adam G. Singer, PLLC**
60 E 42nd Street, Suite 4600
New York, NY 10165
T: 212.842.2428
F: 212.658.9682
E: asinger@adamsingerlaw.com

*admitted pro hac vice*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **BRANDON SANDERS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **C.A. NO. 1:2018-CV-10016** |
| | ) | |
| **MAKESPACE LABS, INC,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I certify that I have filed the foregoing Plaintiff's Memorandum of Law In Support of Plaintiff's Motion for Class Certification electronically using the Court's CM/ECF System, which will automatically send notice of such filing to all counsel of record.

/s/ *Jeffrey B. Sand*
Jeffrey B. Sand