**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **BRANDON SANDERS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **C.A. NO. 1:2018-CV-10016** |
| **v.** | ) | |
| | ) | |
| **MAKESPACE LABS, INC,** | ) | **MEMORANDUM OF LAW IN** |
| | ) | **SUPPORT OF MOTION FOR AN** |
| **Defendant.** | ) | **ORDER DIRECTING NOTICE TO** |
| | ) | **THE CLASS** |
| | ) | |
| | ) | |
| | ) | |

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... iii

I.   INTRODUCTION ...................................................................................................... 1

II.  STATEMENT OF THE FACTS ................................................................................. 1

    *A.   Plaintiff's Claims* ............................................................................................... *1*

    *B.   Plaintiff Investigated His Claims* ....................................................................... *2*

    *C.   The Parties Briefed Class Certification Issue* ..................................................... *2*

    *D.   Settlement Discussions* ....................................................................................... *3*

III. TERMS OF THE SETTLEMENT ............................................................................... 3

    *A.   Generally* ........................................................................................................... *3*

    *B.   The Proposed Settlement Class* ........................................................................... *3*

    *C.   The Consideration Provided to Settlement Class Members* ................................... *4*

        1.   Automatic Cash Payments to Class Members ................................................. 4

        2.   Attorneys' Fees and Expenses ....................................................................... 4

        3.   Costs of Notice and Administration ................................................................ 4

    *D.   Released Claims* ................................................................................................. *5*

    *E.   Notice Process* ................................................................................................... *5*

    *F.   Opt Out Rights* ................................................................................................... *6*

    *G.   Objections to the Settlement* ............................................................................... *6*

IV.  ARGUMENT IN SUPPORT OF DIRECTING NOTICE TO THE CLASS ..................... 6

    *A.   The Court Will Likely Be Able to Approve the Settlement Agreement Because It Is Fair, Reasonable And Adequate* ............................................................................... *7*

        1.   Plaintiff and Class Counsel Have Adequately Represented the Class ............... 8

        2.   The Settlement Agreement is the Result of Engaged, Arms-Length Negotiations Overseen by an Experienced Mediator. ...................................................... 10

        3.   The Settlement Provides Substantial Relief for Settlement Class Members ....... 11

            a.   The Settlement Agreement Is a Preferable Alternative to the Risks Each Party Would Face Through Continued Litigation ........................................... 12

            b.   The Proposed Award of Attorney's Fees Is Fair and Reasonable ............... 13

            c.   The Method of Providing Relief Will be Effective ................................... 14

       d.  The Settlement Treats All Settlement Class Members Fairly ............................... 14

B.  *The Court Will Likely Be Able to Certify the Settlement Classes for the Limited Purpose of Settlement* ............................................................................................................. *14*

    1.  The Settlement Class Is Numerous ................................................................ 15

    2.  Questions of Law and Fact Are Common to the Classes ................................ 15

    3.  Plaintiff's Claim is Typical of the Claims of the Classes ............................... 16

    4.  Plaintiff Will Fairly and Adequately Protect the Interests of the Classes .................... 17

    5.  Rule 23(b)(3) Predominance and Superiority Exist Here ............................... 17

C.  *The Proposed Notice Program Is Constitutionally Sound* ................................ *18*

D.  *Scheduling a Final Approval Hearing Is Appropriate* ..................................... *19*

V.   CONCLUSION ............................................................................................................. 20

## TABLE OF AUTHORITIES

Page(s)

## CASES

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.RD. 171, 174-75 (S.D.N.Y. 2014) ................................................................6

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) ................................................................18

*Berry v. LexisNexis Risk & Info. Analytics Group, Inc.*,
2014 WL 4403524 (E.D. Va. Sept. 5, 2014) ................................................................9

*Butto v. Collecto Inc.*,
290 F.R.D. 372 (E.D.N.Y. 2013) ................................................................15

*City of Burlington v. Dague*,
505 U.S. 557 (1992) ................................................................13

*Clark v. Ecolab Inc.*,
2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) ................................................................7, 10

*Comer v. Cisneros*,
37 F.3d 775 (2d Cir. 1994) ................................................................15, 16

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995) ................................................................15

*In re Currency Conversion Fee Antitrust Litig.*,
2006 WL 3247396 ................................................................10, 12

*D'Alauro v. GC Servs. Ltd*,
168 F.R.D. 451 (E.D.N.Y. 1996) ................................................................18

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ................................................................10

*In re Drexel Burnham Lambert Group, Inc.*,
960 F.2d at 291 ................................................................8, 15, 17

*Gen. Tel. Co. of Southwest v. Falcon*,
457 U.S. 147 (1982) ................................................................16

*Giddiens v. Infinity Staffing Solutions*,
No. 13-cv-7115, Dkt. No. 27-2 (E.D. Pa.) (settlement agreement filed with the
Court on Aug. 21, 2015 providing class members with a claim under FCRA
Section 1681b(b)(3) with $1,000) ................................................................12

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................11

*Harrison v. Great Springwaters of Am., Inc.*,
  1997 WL 469996 (E.D.N.Y. June 18, 1997) ............................................15, 17, 18

*Kelen v. World Fin. Network Nat'l Bank*,
  302 F.R.D. 56 (S.D.N.Y. 2014) ................................................................15

*Kincaid v. Courier Express, et al.*,
  No. 1:18-cv-00707-AT (N.D. Ga. Jan. 31, 2019) ...........................................9

*Lake v. First Nationwide Bank*,
  156 F.R.D. 615 (E.D. Pa. 1994) ................................................................18

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997) ................................................................8, 15, 16, 17

*Marisol A. v. Giuliani*,
  929 F. Supp. 662 (S.D.N.Y. 1996) ...........................................................15

*Menkes v. Stotle-Nielsen S.A.*,
  270 F.R.D. 80 (D. Conn. 2010) ................................................................7

*In re Methyl Tertiary Butyl Ether (MBTE) Prods. Liab. Litig.*,
  241 F.R.D. 185 (S.D.N.Y. 2007) ..............................................................8

*In re Nasdaq Market-Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997) ................................................................7

*Nieves v. Cmty. Choice Health Plan of Westchester*,
  2012 WL 857891 (S.D.N.Y. Feb. 24, 2012) ...............................................11

*In re Platinum & Palladium Commodities Litig.*,
  2014 WL 3500655 (S.D.N.Y. July 15, 2014) .............................................11

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) ..............................................................13

*Reardon v. ClosetMaid Corporation*,
  No. 08-cv-01730, Dkt. No. 200-1 (W.D. Pa.) (settlement agreement filed with
  the Court on Jan. 25, 2014, providing $400 to each class member who was
  subject to adverse action without being given notice and a copy of the
  consumer report used to make the adverse action) ................................................12

*Rivera v. Fair Chevrolet Geo P'ship*,
  165 F.R.D. 361 (D. Conn. 1996) ................................................................15

*Rodriguez v. Calvin Klein, Inc. et al,*
  1:15-cv-02590-JSR (S.D.N.Y.)........................................................12

*Rossini v. Ogilvy & Mather, Inc.,*
  798 F.2d 590 (2d Cir. 1986).........................................................16

*Sanchez v. Launch Technical Workforce Solutions, LLC,*
  No. 1:17-cv-01904-ELR-AJB (N.D. Ga. Nov. 7, 2018)..........................9

*Savino v. Computer Credit Corp.,*
  173 F.R.D. 346 (E.D.N.Y. 1997)...................................................15

*Taylor v. GfK Custom Research, LLC,*
  1:16-cv-9968-ER (S.D.N.Y).........................................................12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
  396 F.3d 96 (2d Cir. 2005).......................................................6, 10

*Wardlaw et al. v. Freedom Trailers, LLC, et al.,*
  No. 5:17-cv-00010-LGW-RSB (S.D. Ga. Feb. 5, 2018) ........................9

*White v. Experian Info. Solutions,*
  2014 WL 1716154 (C.D. Cal. May 1, 2014) ....................................9

## STATUTES

Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* ........................ *passim*

  15 U.S.C. §§ 1681b(b)(3) ........................................................ *passim*

## FEDERAL RULES

Fed. R. Civ. P. 23 ...................................................................1, 7

Fed. R. Civ. P. 23(a) ..............................................................14, 17

Fed. R. Civ. P. 23(a)(1)................................................................15

Fed. R. Civ. P. 23(a)(2)............................................................15, 16

Fed. R. Civ. P. 23(a)(3)................................................................16

Fed. R. Civ. P. 23(a)(4)................................................................17

Fed. R. Civ. P. 23(b) ..................................................................18

Fed. R. Civ. P. 23(b)(3)........................................................14, 17, 18

Fed. R. Civ. P. 23(c)(2)(B) ........................................................18, 19

v

Fed. R. Civ. P. 23(c)(3) ...............................................................................................19

Fed. R. Civ. P. 23(e) ...............................................................................................6, 20

Fed. R. Civ. P. 23(e)(1) ...............................................................................................18

Fed. R. Civ. P. 23(e)(1)(B) ...........................................................................................1, 6

Fed. R. Civ. P. 23(e)(1)(B)(ii) ........................................................................................14

Fed. R. Civ. P. 23(e)(2) ........................................................................................ *passim*

Fed. R. Civ. P. 23(e)(3) .................................................................................................8

Fed. R. Civ. P. 23(f) ...................................................................................................13

## I.    INTRODUCTION

Plaintiff Brandon Sanders, by his counsel, submits this Memorandum of Law in support of his motion for an order directing notice of a proposed settlement in this class action case to members of the proposed classes.[1]    A copy of the executed Settlement Agreement ("Agreement") is attached hereto.

By this motion, Plaintiff respectfully requests this Court to enter an Order:  (1) finding that it will likely be able to approve the proposed settlement under Fed. R. Civ. P. 23(e)(2), as amended, and certify the proposed Settlement Class for purposes of judgment on the Settlement; (2) approving the form, content, and method of delivering notice to the Class as set out in the Settlement Agreement; and (3) scheduling a final approval hearing.

## II.    STATEMENT OF THE FACTS

### A.    Plaintiff's Claims

This is a consumer class action under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* ("FCRA") brought on behalf of individuals who applied for employment at Defendant MakeSpace Labs, Inc.  Plaintiff filed his Class Action Complaint on October 30, 2018, seeking class-wide relief for willful violations of section 1681b(b)(3) of the FCRA. Dkt. No. 1.  The complaint asserts that Defendant systematically violated section 1681b(b)(3) of the FCRA – the "pre-adverse action notice" requirement – by using consumer reports to make adverse employment decisions without, beforehand, providing the person who is the subject of the report a copy of the report and a summary of rights under the FCRA.

---

[1]  This motion reflects amendments to Fed. R. Civ. P. 23 which took effect on December 1, 2018. The amendments clarified the requirements for court review and approval of class action settlements.   Among other changes, the concept of "preliminary approval" and an initial, conditional certification of the settlement class(es) was replaced with a finding that "giving notice is justified by the parties' showing that the court will likely be able" to give approval to the settlement and certify the settlement class(es) by the time of the final approval hearing.   Fed. R. Civ. P. 23(e)(1)(B).

Specifically, Plaintiff asserts that MakeSpace obtains consumer reports (or "background checks") on candidates for employment.   Plaintiff claims that MakeSpace uses these background checks to make hiring determinations about candidates without first providing them with notice and a copy of the report as required by the FCRA.   As a result, individuals who are rejected on the basis of the reports are denied any opportunity to review and contest the contents of the reports before they lose the job opportunity with MakeSpace.

Defendant submitted a letter motion seeking leave to move to dismiss the Complaint, and Plaintiff responded.   Dkt. Nos.   17-18.   Defendant withdrew its request to move to dismiss, and answered the Complaint on March 14, 2019.   Dkt. No. 26.   Defendant denies Plaintiff's allegations, and denies that it committed any violation of the FCRA.

**B.      Plaintiff Investigated His Claims**

The parties exchanged extensive written discovery requests in this matter, and produced documents including MakeSpace's policy and procedure documents.   The parties also conducted depositions of the Class Representative and a Corporate Representative of Defendant.   The parties also conducted discovery of the third parties from which MakeSpace obtained its background reports, Checkr, Inc. and Verified First, LLC.

**C.      The Parties Briefed Class Certification Issue**

Plaintiff filed his motion for class certification on December 23, 2019, setting forth the proposed class of consumers and explaining in detail the reasons that class certification is appropriate in this matter.   Dkt. Nos. 48-49.   Defendant filed its response on January 27, 2020, and Plaintiff replied on February 17, 2020.   Dkt. Nos. 53-55.

### D.      Settlement Discussions

Armed with sufficient information to discuss resolution of the case, the parties engaged in extensive arms-length settlement discussions, including a telephonic mediation with the assistance of experienced mediator, Hon. Diane Welsh (Ret.) of JAMS.   The parties reached an initial agreement on June 18, 2020.   Documenting a formal settlement agreement and related documents took additional time and included the preparation and exchange of drafts and a series of telephone and written negotiations concerning the specific terms and conditions of the agreement and exhibits to the agreement, including the proposed class notices and class forms.   The parties finalized their agreement on July 31, 2020, resulting in the Settlement Agreement filed along with this Motion.

### III.      <u>TERMS OF THE SETTLEMENT</u>

### A.      Generally

The proposed settlement is fair, reasonable and adequate because it provides substantial benefits to Settlement Class Members.   The Settlement Agreement provides that all class members will receive an automatic cash payment, without the need to take any action.   The details of the agreement are set forth in the Settlement Agreement, attached hereto. For purposes of directing notice to the class, the following summarizes the Settlement Agreement's terms.

### B.      The Proposed Settlement Class

The parties agreed to resolve the claims of a class of consumers, defined as follows:

All natural persons residing within the United States and its Territories about whom, (i) beginning five (5) years prior to the filing of the Action and continuing through the date of this agreement, (ii) were the subject of a consumer report used by Defendant for employment purposes, (iii) were the subject of an adverse employment action by Defendant, and (iv) were not provided with a copy of the report and/or a written summary of their rights under the FCRA at least five (5) business days prior to the adverse action.

It is the parties' understanding that there are 143 members of the Settlement Class.

### C.   The Consideration Provided to Settlement Class Members

The Settlement Agreement provides that MakeSpace will establish a Settlement Fund of $360,850.   Agreement § 2.4.   The fund will be distributed as described below.

#### 1.   Automatic Cash Payments to Class Members

All settlement class members whose notices are not returned as undeliverable and who do not exclude themselves from the settlement will be entitled to an automatic cash payment of $950.00 from the Settlement Fund, without the need to make a claim.   Agreement § 2.5.

#### 2.   Attorneys' Fees and Expenses

MakeSpace has agreed to pay Class Counsel's reasonable attorneys' fees and costs up to $225,000.00 out of the Settlement Fund. Agreement § 9.1.   The FCRA is a fee-shifting statute, and the amount requested is based upon Class Counsel's lodestar, not as a percentage of the total recovery, and was negotiated only after the parties had reached an agreement as to recovery for settlement class members.   The award shall include all fees, costs, and other expenses for all attorneys, their employees, consultants, and other agents who performed work in connection with this litigation. Defendant has agreed not to oppose an award up to that amount.   Class Counsel will submit a fee petition in support of the requested award ten days prior to the deadline for class members to object to the settlement, and a copy of the fee petition will be available on the settlement website.

#### 3.   Costs of Notice and Administration

Separate and apart from establishing the Settlement Fund, MakeSpace has agreed as a condition of the settlement to pay for the costs of notice and administration of the settlement. Agreement § 8.1.

### D.     Released Claims

In exchange for the benefits conferred by the settlement, Plaintiff and all Settlement Class members shall release the Released Parties from all Claims arising under the Fair Credit Reporting Act, 15 U.S.C. § 1681b(b)(3), up to and including the Effective Date. Agreement § 3.

### E.     Notice Process

The Settlement Agreement provides for a notice program in which the Settlement Administrator will issue notices directly to Settlement Class members to inform them of the Settlement and their rights. Agreement § 4. Members of the Class will receive notice by either electronic mail or first-class mail using the most recent contact information available. The following summarizes the Notice Program.

The primary form of notice for the Settlement will be via email, because MakeSpace regularly communicates with consumers via email.   *Id*. § 4.3.   A copy of the proposed email notice is attached to the Agreement as Exhibit C.   For Class Members for whom no email address is available, or whose email notices are undeliverable after two attempts, the Settlement Administrator shall send a postcard notice containing the same information as the email notice.   Agreement § 4.3.2; Exhibit D.

Additionally, the Settlement Administrator will establish and maintain a website devoted to providing information regarding the settlement. *Id*. § 4.5. The Settlement Website will contain information regarding the settlement, the rights of Class members, and a list of important deadlines. *Id*. The Settlement Agreement, and a Long Form Notice will also be available on the website. Plaintiff's Motion for Attorneys' Fees and Costs will be available for Class members to download after it is filed.   These materials will remain on the website until one year after the settlement's Effective Date. *Id*.

### F.     Opt Out Rights

Members of the Settlement Classes may opt out of the settlement by sending, via electronic or U.S. Mail, a valid request for exclusion to the Settlement Administrator within sixty calendar days after the date of the notice.   Agreement § 5.1.

### G.     Objections to the Settlement

Any Settlement Class Member who has not opted out may submit a written objection to the Settlement Agreement. Agreement § 6.1. Settlement Class Members will have sixty days from the date of the initial mailing to object to the Settlement. *Id.* The objection must be in writing, identify the objector, explain the basis for the objection, and be submitted to Class Counsel, Defendant's Counsel, and the Clerk of the Court.   *Id.* Settlement Class Members who object may be heard at the final approval hearing. *Id.*   Settlement Class Members will furthermore have an opportunity to review Class Counsel's request for attorneys' fees and expenses before the deadline to object.

### IV.     <u>ARGUMENT IN SUPPORT OF DIRECTING NOTICE TO THE CLASS</u>

There is a "'strong judicial policy in favor of settlements, particularly in the class action context'." *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)). As courts in this District have noted, "the Supreme Court has cautioned that, in reviewing a proposed settlement, courts should 'not decide the merits of the case or resolve unsettled legal questions.'" *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.RD. 171, 174-75 (S.D.N.Y. 2014) (quoting *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n. 14 (1981)).

Fed. R. Civ. P. 23(e), as amended in 2018, governs a court's consideration of a proposed class action settlement, and states that grounds exist to give notice of a proposed class action settlement where the parties show that "the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."   Fed. R. Civ. P. 23(e)(1)(B).

### A.   The Court Will Likely Be Able to Approve the Settlement Agreement Because It Is Fair, Reasonable And Adequate

The decision to order that notice be given of a proposed class action settlement was previously known as "preliminary approval" of a class action settlement.    This decision is simply the first step in the settlement process, permitting notice to issue to the classes and for class members to opt out of the settlement or object.   *Clark v. Ecolab Inc*., No. 07-civ-8623, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009); *see also In re Nasdaq Market-Makers Antitrust Litig*., 176 F.R.D. 99, 102 (S.D.N.Y. 1997).    Subsequent to the notice period, the court will be in a position to evaluate settlement "with the benefit of the class members' input."    *Clark*, 2009 WL 6615729, at *3; *see also Menkes v. Stolte-Nielsen S.A*., 270 F.R.D. 80, 101 (D. Conn. 2010) ("Preliminary approval of class action settlement, in contrast to final approval, 'is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness.'" (quoting *In re Traffic Executive Association-Eastern Railroads*, 627 F.2d 631, 632 (2d Cir. 1980))).

The fundamental principles governing a court's evaluation of whether a class action settlement is fair, reasonable, and adequate remain undisturbed by the 2018 amendments to Rule 23:   "The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."    Fed. R. Civ. P. 23, Advisory Committee Note on 2018 Amendment to Subdivision (e)(2).

Rule 23(e)(2) now explicitly sets forth four factors for determining whether a settlement is fair, reasonable and adequate, and includes factors traditionally considered at preliminary approval in the Second Circuit and in this District:

- the class representative and class counsel have adequately represented the class;

7

- the proposal was negotiated at arm's length;

- the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the processing of class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; (iv) any agreement required to be identified under Rule 23(e)(3), and

- the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).    Consideration of these factors supports sending notice to the Settlement Class Members of the proposed settlement here.

      1.   <u>Plaintiff and Class Counsel Have Adequately Represented the Class</u>

Under Second Circuit precedent, adequacy of representation is met if it appears that (1) a plaintiff's attorneys are "'qualified, experienced and generally able' to conduct the litigation" and (2) a plaintiff's interests are not antagonistic to those of the class he seeks to represent.   *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d at 291 (citation omitted); see also *Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997).   "In the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to prosecute vigorously the action on behalf of the class." *In re Methyl Tertiary Butyl Ether (MBTE) Prods. Liab. Litig.*, 241 F.R.D. 185, 199 n.99 (S.D.N.Y. 2007).

First, Class Counsel are highly experienced in both consumer class actions and FCRA litigation.   The firm of Francis Mailman Soumilas, P.C. is highly regarded nationally for the high caliber of its work and experience in consumer protection litigation.   The firm has been found to be well-qualified to represent consumer classes by courts in many districts, and has been certified as class counsel on over thirty (30) occasions.   The firm has been appointed class counsel over

objection and competing counsel's challenge in interim appointment litigation. *See, e.g., White v. Experian Info. Solutions*, No. 05-01070, 2014 WL 1716154, at *13, 19, 22 (C.D. Cal. May 1, 2014) (finding the firm, then operating as Francis & Mailman P.C., to be "FCRA specialists" and appointing firm and its team as interim class counsel over objections from competing group because their team's "credentials and experience [we]re significantly stronger in class action and FCRA litigation."); *Berry v. LexisNexis Risk & Info. Analytics Group, Inc*., No. 3:11-cv-754, 2014 WL 4403524, at *11 (E.D. Va. Sept. 5, 2014) (finding the firm and its team adequate class counsel in contested objection).

The attorneys of Weiner & Sand are likewise highly experienced in litigating and negotiating settlements in class actions, and have served as counsel in other successful class actions. *See*, *e.g., Kincaid v. Courier Express, et al.*, No. 1:18-cv-00707-AT (N.D. Ga. Jan. 31, 2019) (Dkt. 88) (appointing Weiner & Sand as class counsel); *Sanchez v. Launch Technical Workforce Solutions, LLC*, No. 1:17-cv-01904-ELR-AJB (N.D. Ga. Nov. 7, 2018) (Dkt. 59) (same); *Wardlaw et al. v. Freedom Trailers, LLC, et al.*, No. 5:17-cv-00010-LGW-RSB (S.D. Ga. Feb. 5, 2018).

Second, Plaintiff Brandon Sanders has no interests antagonistic to the interest of the Class. Throughout this litigation, Plaintiff has been subjected to discovery and to inquiries about this case, his work history, and his honesty. He has demonstrated diligence and courage in standing up for job applicants who have been affected by Defendant's practices with respect to the use of consumer reports. There are no conflicts between Plaintiff's interests and the interests of the Settlement Class.

Accordingly, Plaintiff and Class Counsel have and will continue to adequately represent the Settlement Class.

2. <u>The Settlement Agreement is the Result of Engaged, Arms-Length Negotiations Overseen by an Experienced Mediator.</u>

A "'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'"  *Wal-Mart Stores, Inc., v. Visa U.S.A.,* 396 F.3d 96, 116 (2d Cir. 2005) (citation omitted).   Here, not only was the Settlement reached subsequent to merits-based discovery but it was negotiated at arm's length by counsel with extensive experience in consumer protection class action litigation, who have a full understanding of the pros and cons of proceeding with the action in lieu of settlement at this juncture.  *Gross,* 2006 WL 318814, at *5 ("The litigation has thus proceeded to a stage at which counsel have demonstrated a thorough understanding of the complexity of the issues and the strengths and weaknesses of their respective claims, defenses and strategies.").

Furthermore, the Parties engaged in private mediation before a well-respected mediator, a retired judge with substantial experience with the FCRA, the Hon. Diane Welsh of JAMS.   The Parties' use of a well-regarded mediator supports the presumption of fairness that the settlement was reached absent collusion.  *See, e.g., D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("This Court has noted that a court-appointed mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure*"); In re Currency Conversion Fee Antitrust Litig*., 2006 WL 3247396, at *5 ("[mediatior's] participation in the negotiations substantiates the parties' claim that the negotiations took place at arm's length."); *Clark,* 2009 WL 6615729, at *4 ("An experienced class action employment mediator . . . assisted the parties with the settlement negotiations and presided over a two-day mediation.   This reinforces the non-collusive nature of the settlement.").

10

Accordingly, Plaintiff submits the Agreement was negotiated in good faith and free of collusion.

   3.  <u>The Settlement Provides Substantial Relief for Settlement Class Members</u>

At this stage the court must make an initial evaluation of "the fairness, reasonableness, and adequacy of the settlement terms." *Nieves v. Cmty. Choice Health Plan of Westchester*, No. 08-cv-321, 2012 WL 857891 (S.D.N.Y. Feb. 24, 2012). At this preliminary stage, it is not necessary for the court to consider all the *Grinnell* factors applicable to final approval.[2] *In re Platinum & Palladium Commodities Litig.*, No. 10-cv-3617, 2014 WL 3500655, at *12 (S.D.N.Y. July 15, 2014) (recognizing courts in Second Circuit "typically consider nine *Grinnell* factors at final approval stage."); *Nieves*, 2012 WL 857891, at *5 ("The Court need not perform full fairness analysis at this time because it will be done in connection with the fairness hearing.").

The proposed Settlement is well within the range of what is reasonable. For the class claim asserted by Plaintiff under section 1681b(b)(3) of his Complaint, Plaintiff achieved a

---

[2] In connection with final approval, the Court will ultimately be required to assess the following factors set forth in *City of Detroit v. Grinnell Corp.*:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974). On balance, based on information known at this time (some of which is highlighted herein) and as will be set forth in a subsequent motion for final approval of the settlement, the totality of the *Grinnell* factors will weigh in favor of granting final approval of the proposed Settlement. *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) ("In finding that a settlement is fair, not every factor must weigh in favor of settlement, 'rather the court should consider the totality of these factors in light of the particular circumstances.'" (quoting *Thompson v. Metropolitan Life Ins. Co.,* 216 F.R.D. 55, 61 (S.D.N.Y. 2003))).

monetary settlement of $950 for all members of the Settlement Class.   Agreement § 2.5.   These payments provide a substantial benefit to Class members.

For example, in a comparable FCRA class action settlement brought in this District, *Taylor v. GfK Custom Research, LLC*, 1:16-cv-9968-ER (S.D.N.Y), this Court approved a settlement which provided the same $950 recovery for individuals who, like class members here, lost a job opportunity after the defendant failed to provide proper notice under FCRA section 1681b(b)(3). *Taylor* Dkt. No. 36-1 at § 2.5.   Similarly, in *Rodriguez v. Calvin Klein, Inc. et al*, 1:15-cv-02590-JSR (S.D.N.Y.), this Court approved a settlement that provided payments between $650-975 for class members with a claim under FCRA Section 1681b(b)(3) who were confirmed to have never worked for the defendant.   *Rodriguez* Dkt. No. 22-1 at § 6.1(A).   *See also Giddiens v. Infinity Staffing Solutions*, No. 13-cv-7115, Dkt. No. 27-2 at section 5.1.2 (E.D. Pa.) (settlement agreement filed with the Court on Aug. 21, 2015 providing class members with a claim under FCRA Section 1681b(b)(3) with $1,000); *Reardon v. ClosetMaid Corporation*, No. 08-cv-01730, Dkt. No. 200-1 at ¶ 7.2.2.1 (W.D. Pa.) (settlement agreement filed with the Court on Jan. 25, 2014, providing $400 to each class member who was subject to adverse action without being given notice and a copy of the consumer report used to make the adverse action) and Dkt. No. 220, (June 13, 2014 Order finally approving settlement).

These benefits are fair and reasonable in light of the risks of continued litigation, and method of distribution is effective here.

> a.   **The Settlement Agreement Is a Preferable Alternative to the Risks Each Party Would Face Through Continued Litigation**

Plaintiff and his counsel recognize the expense and length of time required to continue to litigate this case, including the time and expense associated with litigating this case through trial against Defendant and through possible appeals, could take several more years.   *See In re Currency Conversion Fee Antitrust Litig*., 2006 WL 3247396, at *6 (determining settlement was

within reasonable range where "the expense and delay of continued litigation could be substantial"). Counsel has also taken into account the time already invested in this case. The Class Representative and his counsel believe that the settlement confers a substantial immediate benefit upon the Class. *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) ("'Instead of the lengthy, costly, and uncertain course of further litigation, the settlement provides a significant and expeditious route to recover for the Class.'" (citation omitted)).

As set forth in further detail below, Plaintiff is confident that if the case were to continue to litigate, he would be successful in certifying the Settlement Class on contest. Plaintiff anticipates, however, that MakeSpace would continue to raise substantive opposition to the certification of any class, including through the vehicle of appellate review pursuant to Fed. R. Civ. P. 23(f).

Even if Plaintiff succeeded in certifying the class, he would still face the task of proving liability on the merits of his claims, including the risks associated with a possible motion for summary judgment, and the even greater risks, uncertainty, delay, and expense of trial. Even if Plaintiff succeeded in passing the liability hurdle, the parties would continue to battle over whether Plaintiff and other class members have sustained damages, and if so, the proper measure of those damages. The battles would be fought not only before and at trial, but also on appeal.

By contrast, the proposed Settlement provides significant monetary benefits to the Settlement Class without the risks set out above.

### b.      The Proposed Award of Attorney's Fees Is Fair and Reasonable

If the Court orders that notice be directed to the Settlement Class, Plaintiff's counsel will request that the Court award them attorneys' fees and costs based on their lodestar in the case, in the amount of $225,000. Agreement at § 9.1. This amount, was negotiated only after the substantive terms of the settlement were agreed upon. The lodestar method of calculating attorneys fees is strongly presumed to yield a reasonable fee. *City of Burlington v. Dague,* 505

U.S. 557, 562 (1992).   Prior to final approval, Class Counsel will file a separate motion for an award of attorneys' fees and costs, addressing in detail the facts and law supporting their fee request.   Counsel will file this motion 10 days before the deadline to object to the settlement to provide Settlement Class Members with sufficient time to review the fee request.

### c.        The Method of Providing Relief Will be Effective

As set forth above, all Settlement Class Members who do not opt out will receive an automatic cash payment, without the need to submit a claim or take any other action, so long as their notice is not returned as undeliverable after multiple attempts.   Settlement Class Members will have an opportunity to update their contact information, including mailing address, with the Settlement Administrator in order to ensure that checks reach all class members.

### d.        The Settlement Treats All Settlement Class Members Fairly

The proposed Settlement Agreement here treats all class members fairly.   The Advisory Committee Note to the 2018 amendments to Rule 23(e)(2) indicates that an analysis regarding the fair treatment of class members looks to "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." The Agreement here follows this guidance, because it treats all Settlement Class members with identical claims exactly the same, providing $950 for each.   This arrangement treats all class members fairly.

### B.       The Court Will Likely Be Able to Certify the Settlement Classes for the Limited Purpose of Settlement

Sending notice of the terms of the proposed Settlement is also justified because the Court will likely be able to certify the proposed Settlement Class for purposes of judgment on the proposal.   Fed. R. Civ. P. 23(e)(1)(B)(ii).   In the Settlement Agreement, the Parties agree that the Court should certify the Settlement Class for settlement purposes only.   Agreement § 2.1    For the reasons set forth below, the Settlement Class meets the requirements for certification under Rule 23(a) and (b)(3).

14

1.      The Settlement Class Is Numerous

Rule 23(a)(1) does not require that joinder be impossible; rather, joinder of all members is impracticable when the procedure would be "expensive, time-consuming, and logistically unfeasible." *In re Drexel Burnham Lamber Group, Inc*., 960 F.2d 285, 290 (2d Cir. 1992).   In the Second Circuit, numerosity is generally presumed "at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *see also Kelen v. World Fin. Network Nat'l Bank*, 302 F.R.D. 56, 64 (S.D.N.Y. 2014) (determining numerosity requirement met where consolidated class consisted of 72 members).   Here, there are 143 members of the Settlement Class, which is sufficient to satisfy the numerosity requirement.

2.      Questions of Law and Fact Are Common to the Classes

Rule 23(a)(2) is satisfied when the named plaintiff shares "'at least one question of fact or law with the grievance of the prospective class.'"   *Marisol A. v. Giuliani*, 929 F. Supp. 662, 690 (S.D.N.Y. 1996) (citation omitted).   The Rule does not require that all questions be common or even that common questions predominate.   *See Savino v. Computer Credit Corp.,* 173 F.R.D. 346, 352 (E.D.N.Y. 1997).   All class members need not share identical claims; factual differences among the claims of the putative class members do not defeat certification.   *Rivera v. Fair Chevrolet Geo P'ship*, 165 F.R.D. 361, 363 (D. Conn. 1996).   A common question is one which arises from a common nucleus of operative facts.   Courts have typically found a common nucleus of operative facts where, as in the present action, the defendant engaged in standardized conduct toward putative class members.   *Comer v. Cisneros*, 37 F.3d 775, 796-97 (2d Cir. 1994); *Marisol A*, 126 F.3d 372, 376-77 (2d Cir. 1997).

The fact that FCRA section 1681b(b)(3) violations are apparent on the face of standardized form documents easily satisfies commonality.   *See, e.g., Butto v. Collecto Inc*., 290 F.R.D. 372, 394 (E.D.N.Y. 2013) (commonality satisfied where central issue was whether defendant mailed a substantially similar collection letter); *Harrison v. Great Springwaters of Am., Inc.*, No. 96-cv-5110, 1997 WL 469996, at *3 (E.D.N.Y. June 18, 1997) (determining commonality requirement satisfied where plaintiffs received comparable debt collection letters from defendants).

Here, MakeSpace used the same standardized procedures to obtain consumer reports about candidates, all reports were evaluated and adjudicated according to the same criteria, and MakeSpace failed to send any notice or a copy of the relevant report to all members of the Settlement Class before taking adverse action. Thus, there is one question of fact and law common to the Class:   whether MakeSpace's actions violated FCRA section 1681b(b)(3).   Accordingly, given the presence of common questions raised by MakeSpace's uniform behavior, it is plain that Rule 23(a)(2)'s requirement for the existence of common questions of fact or law is satisfied.

        3.    <u>Plaintiff's Claim is Typical of the Claims of the Classes</u>

Rule 23(a)(3) requires that the claims of the class representative be "typical of the claims . . . of the class."   Rule 23(a)(3) and the adequacy of representation requirement set forth in subsection (a)(4) are designed to ensure that the interests of unnamed class members will be adequately protected by the named class representatives.   *See, e.g., Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982).   The threshold for establishing typicality is low. Typicality does not require that the claims of the class members be identical.   The claims merely have to arise from the same course of conduct.   *Comer*, 37 F.3d at 797; *Marisol A.*, 126 F.3d at 376.

Where, as here, the Plaintiff alleges a common pattern of wrongdoing and would present the same evidence (based on the same legal theories) to support both his claims and the claims of the Class Members, courts have held the typicality requirement to be satisfied, notwithstanding the possibility of inconsequential factual variances in the position of each class member.   *Comer*, 37 F.3d at 797; *Marisol A.*, 126 F.3d at 376; *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598-99 (2d Cir. 1986).   Typicality is easily satisfied in an action such as the one at bar because the Section 1681b(b)(3) claim is based on MakeSpace's common practice of not communicating with consumers about the results of background checks, and failure to notify them that negative

information on a background check could impact their application until after adverse action had already been taken.

Plaintiff's experience is typical of the Settlement Class here.   Like all members of the Settlement Class, MakeSpace obtained a consumer report about him, and evaluated it according to its internal criteria and determined that it would take adverse action against him based on the contents of the report.   And like all members of the Settlement Class, MakeSpace communicated this adverse decision to Plaintiff before it sent him any notice or copy of the consumer report it used.   Accordingly, typicality is satisfied here.

        4.    <u>Plaintiff Will Fairly and Adequately Protect the Interests of the Classes</u>

As discussed in section IV.A.1 above, the adequacy of representation requirement is met here because Plaintiff has retained qualified and experienced counsel, and has no interest antagonistic to those of the classes.   *In re Drexel*, 960 F. 2d. at 291; *Marisol A.*, 126 F.3d at 378. Rule 23(a)(4) is therefore satisfied here.

        5.    <u>Rule 23(b)(3) Predominance and Superiority Exist Here</u>

In addition to meeting the four threshold requirements of Rule 23(a) as set forth above, the proposed settlement class here satisfies the requirements of Rule 23(b)(3) because "questions of law or fact common to class members predominate over any questions affect individual members" and, (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Resolution of the common issues of fact and law in this case will not only promote the efficient adjudication of this matter, it will dispose of it entirely.   Plaintiff has alleged a common course of conduct by MakeSpace against Plaintiff and the Class.   The overarching question of law and fact here whether MakeSpace's failure to provide notice to applicants whose background reports led to an adverse employment action was a violation of FCRA section 1681b(b)(3). Common issues predominate over individual issues where, as here, a plaintiff has alleged a violation of law flowing from a common practice utilized by a defendant.   *See, e.g., Harrison*,

1997 WL 469996, at *9 (finding Rule 23(b)(3) satisfied where legality of standardized debt collection letters were at issue); *D'Alauro v. GC Servs. Ltd*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996) (determining first requirement of Rule 23(b)(3) met where action relates to "legality of standardized documents and practices").

As to superiority, class settlement is the most efficient means of adjudicating the dispute here. A class action is widely recognized as superior to other available methods – particularly individual lawsuits – for the fair and efficient adjudication of suit that affects a large number of persons injured by violations of consumer protection laws or common law. Consumer class actions such as the case at bar easily satisfy the superiority requirement of Rule 23(b). *See, e.g., Harrison*, 1997 WL 469996, at *9 (recognizing interest in class members individually controlling prosecution of separate individual suits is typically lower in "actions like this one to enforce compliance with the consumer protection laws, since damage awards in such cases are generally too small to permit a single consumer to bring suit"); *Lake v. First Nationwide Bank*, 156 F.R.D. 615, 626 (E.D. Pa. 1994) (public interest in vindicating rights of consumers favors disposition of claims in a class action).

### C.   The Proposed Notice Program Is Constitutionally Sound

Rule 23(e)(1) states that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement, voluntary dismissal, or compromise. Class members are entitled to the "best notice that is practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. Fed. R. Civ. P. 23(c)(2)(B). The amendments to Rule 23(c)(2)(B) provide that "notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." To comply with due process, notice must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997). The notice must state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv)

that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

The proposed notice plan here complies with these requirements. It provides for individual notice to be sent to each member of the Settlement Class identified in MakeSpace's business records.   Email notice is appropriate because MakeSpace regularly communicates with candidates via email.   The notice program also provides for individual notice via U.S. Mail for any class member for whom MakeSpace does not possess an email address, or whose email notice is undeliverable after two attempts.

The language of the proposed notices is plain and easily understood, providing neutral and objective information about the nature of the settlement. The notice includes the definition of the Class, a statement of each Class Member's rights (including the right to opt-out of the Settlement or object to it, and the deadline to do so), a statement of the consequences of remaining in the Settlement, an explanation of how members can exclude themselves from the Class or object to the Settlement, and methods for obtaining more information, including directions to log on to a dedicated Settlement Website. Agreement at Exhibits C-D. The Long Form notices explain how class members may enter an appearance through an attorney in connection with an objection. Exhibit E.

Plaintiff submits that the notice program outlined in the Settlement Agreements is the best practicable notice under the circumstances of this case, and will be highly effective.

### D.      Scheduling a Final Approval Hearing Is Appropriate

After notice is given to Settlement Class Members of the terms of the proposed Settlement and they have an opportunity to object or opt out, the final step in the settlement approval process is a Final Approval Hearing at which the Court may hear all evidence and argument necessary to make its settlement evaluation. Proponents of the Settlement Agreement may explain the terms

and conditions of the Settlement Agreement, and offer argument in support of final approval. The Court will determine after the Final Approval Hearing whether the Settlement Agreement should be approved, and whether to enter a final order and judgment under Rule 23(e). Plaintiff requests that the Court set a date for a hearing on final approval at the Court's convenience, but no earlier than 110 days after an order directing notices to the Settlement Class is entered.

## V.   CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that this Court:  (1) find that it will likely be able to approve the proposed settlement under Fed. R. Civ. P. 23(e)(2) and certify the proposed Settlement Class for purposes of judgment on the Settlement;  (2) approve the form, content, and method of delivering notice to the Class as set out in the Settlement Agreement; and (3) schedule a formal Final Approval Hearing regarding the Settlement Agreement at the Court's convenience but no earlier than 110 days after any order directing notices to the settlement class.

Respectfully submitted,

Dated:        August 4, 2020                    BY:    /s/ Jeffrey B. Sand
                                                **Weiner & Sand LLC**
                                                Jeffrey B. Sand*
                                                800 Battery Ave, Suite 100
                                                Atlanta, GA 30339
                                                T: (404) 205-5029
                                                F: (866) 800-1482
                                                E: js@atlantaemployeelawyer.com

                                                **Francis Mailman Soumilas, P.C.**
                                                James A. Francis*
                                                Lauren KW Brennan*
                                                1600 Market Street, Suite 2510
                                                Philadelphia, PA 19103
                                                T: 215.735.8600
                                                F: 215.940.8000
                                                E: jfrancis@consumerlawfirm.com
                                                E: lbrennan@consumerlawfirm.com

**Law Office of Adam G. Singer, PLLC**
60 E 42nd Street, Suite 4600
New York, NY 10165
T: 212.842.2428
F: 212.658.9682
E: asinger@adamsingerlaw.com

*admitted pro hac vice

*Attorneys for Plaintiff and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by facsimile to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

Dated:    August 4, 2020                    By:    <u>*/s/ Jeffrey B. Sand*</u>
                                                         Jeffrey B. Sand (*pro hac vice*)